UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=====================================X
YONATAN WEISS,

       **Plaintiff,**

       -against-

NYG CAPITAL LLC d/b/a NEW YORK GLOBAL
GROUP, FNL MEDIA LLC, and
BENJAMIN WEY,

       **Defendants.**
-------------------------------------------------------X

Docket No.: 14-CV-08743

**FIRST AMENDED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff **YONATAN WEISS**, by his attorneys **MORELLI ALTERS RATNER, LLP**, complaining of the Defendants herein, upon information and belief respectfully alleges as follows:

1. Plaintiff **YONATAN "YONI" WEISS** is a 24-year-old man who resides in the City, County and State of New York.

2. Commencing approximately October 2013 until his wrongful termination on or about June 2, 2014, Plaintiff **YONI WEISS** was employed in Manhattan as a graphic designer by Defendants **NYG CAPITAL LLC** doing business as **NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**.

3. At all times hereinafter mentioned, Defendant **NEW YORK GLOBAL GROUP** was and remains a leading U.S. and Asia-based strategic market entry advisory, venture capital and private equity investment group on Wall Street that services clients (including Fortune 500 companies and governments) worldwide. Defendant **NYG CAPITAL LLC** is a company organized and existing under and by virtue of the laws of the State of New York, with its principal place of

business in the City, County and State of New York.

4. With access to approximately $1 billion in investment capital, Defendant **NEW YORK GLOBAL GROUP** has led or participated in more than 250 projects worldwide. Defendant **NYG CAPITAL LLC** d/b/a **NEW YORK GLOBAL GROUP** (hereinafter, referred collectively to as "**NYGG**") employs approximately 110 people globally, including approximately 51 people throughout the United States, approximately seven of whom work in its Manhattan headquarters. Defendant **NYGG**'s annual revenues exceed $25 million.

5. At all times hereinafter mentioned, Defendant **FNL MEDIA LLC** ("**FNL MEDIA**") was and remains a division of and/or the wholly-owned subsidiary of Defendant **NYGG**. Defendant **FNL MEDIA LLC** is a company organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in the City, County and State of New York.

6. Defendant **FNL MEDIA** is the publisher of TheBlot Magazine, a digital publication. TheBlot Magazine claims it "brings traditional journalism to the modern day with bright, witty, opinionated content." TheBlot Magazine further explains: "Our name pays homage to that ubiquitous mark found splattered on the desks of old-world authors, a symbol that evokes the power of the written word." TheBlot Magazine has at least six employees.

7. Throughout Plaintiff's employment, Defendants **NYGG** and **FNL MEDIA LLC** operated as a single or joint enterprise. Throughout Plaintiff's employment, Defendants **NYGG** and **FNL MEDIA** shared the same offices on Wall Street, as well as the same management, ownership, and interrelated operations.

8. Throughout Plaintiff's employment, Defendants **NYGG** and **FNL MEDIA LLC** operated as Plaintiff **YONI WEISS**'s single or joint employer. While Plaintiff **YONI WEISS** was formally employed by Defendant **FNL MEDIA**, throughout his employment with Defendant **FNL**

**MEDIA**, Plaintiff **YONI WEISS** regularly attended weekly strategy meetings for TheBlot Magazine with various **NYGG** employees and executives, including Director of Corporate Communications Hanna Bouveng, General Counsel James Baxter, and Defendant CEO/ Publisher **BENJAMIN WEY**, as well as various Defendant **FNL MEDIA** employees, including Blot Editor-in-Chief Alicia Lu. Plaintiff **YONI WEISS**'s assignments included investigating, chronicling and reporting on Defendant **NYGG**'s business deals and relationships. Throughout Plaintiff's employment with Defendant **FNL MEDIA**, he was also constructively employed by Defendant **NYGG**.

9. Commencing approximately 2002 through the present, Defendant **BENJAMIN WEY** (f/k/a Benjamin Wei and Tianbing Wei) was and remains Chief Executive Officer of Defendant **NYGG**, the highest-ranking executive, manager, supervisor and employee of Defendant **NYGG**.

10. Throughout Plaintiff's employment, Defendant **BENJAMIN WEY** was also Publisher and Owner of TheBlot Magazine, the highest-ranking executive, manager, supervisor and employee of Defendant **FNL MEDIA**. As Publisher and Owner of TheBlot Magazine, Defendant **BENJAMIN WEY** dictated and controlled all content disseminated by TheBlot: nothing was published by Defendant **FNL MEDIA** without **WEY**'s prior approval.

11. Throughout Plaintiff's employment, Defendant **BENJAMIN WEY** routinely boasted: "I'm a very, very powerful man" and "I'm one of the top dogs on Wall Street!" **WEY**, who is approximately in his mid-'40s, is married to lawyer Michaela Wey (an employee of Defendant **NYGG** and of Defendant **FNL MEDIA**), and the father of three children. He is also a virulent sexual harasser and stalker. Defendant CEO/Publisher **BENJAMIN WEY**'s office is located in Manhattan at Defendant **NYGG**'s and Defendant **FNL MEDIA**'s shared headquarters. **BENJAMIN WEY**'s residence is also in Manhattan.

12. Throughout Plaintiff's employment, James N. Baxter, Esq. was Executive Chairman and General Counsel of Defendant **NYGG**, an executive, manager, supervisor and employee of Defendant **NYGG**. Throughout Plaintiff's employment, James N. Baxter, Esq. was also General Counsel for Defendant **FNL MEDIA**. Executive Chairman and General Counsel James Baxter's office is located in Manhattan at Defendant **NYGG**'s and Defendant **FNL MEDIA**'s shared headquarters.

13. Throughout Plaintiff's employment, Defendant **BENJAMIN WEY**'s wife Michaela Wey was responsible for bookkeeping, accounting and payroll for Defendant **NYGG** and Defendant **FNL MEDIA**. Throughout Plaintiff's employment, Michaela Wey was and remains an executive, manager, supervisor and/or employee of Defendant **NYGG** and of Defendant **FNL MEDIA**. Michaela Wey's office is located in Manhattan at Defendant **NYGG**'s and Defendant **FNL MEDIA**'s shared headquarters.

14. At all times material to this Complaint, the individual officers, directors, executives, managers, supervisors, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, executives, managers, supervisors, employees and/or agents of Defendants **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and Defendant **FNL MEDIA LLC**. Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and Defendant **FNL MEDIA LLC** shall hereinafter be referred collectively to as "**NYGG**."

15. Jurisdiction of the subject matter of this action is established in this Court under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000-e(f)(3). Plaintiff first filed these charges before the EEOC, and received his Notice of Right-to-Sue on October 20, 2014. This is the proper venue for this action under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section

2000 et seq., in that unlawful acts alleged herein were committed within this Court's jurisdiction.

## GENERAL ALLEGATIONS OF RETALIATION

16. This lawsuit arises out of Defendant **BENJAMIN WEY**'s systematic subjection of Plaintiff **YONI WEISS**'s co-worker Hanna Bouveng to disgusting and degrading *quid pro quo* sexual harassment. Unfortunately, Ms. Bouveng was repeatedly and consistently subjected to unsolicited sexual propositions and sexual commands, unwanted touching, and stalking.

17. During his employment by Defendants **NYGG**, Plaintiff **YONI WEISS** witnessed this sexual harassment by the company's highest-ranking executive, Defendant **BENJAMIN WEY**, but was afraid to do anything about it. Indeed, when Plaintiff **YONI WEISS** eventually, truthfully reported this sexual harassment to lawyers investigating Hanna Bouveng's complaints, he was subjected to unlawful retaliation. Hanna Bouveng's civil action against Defendants **NYGG** and **BENJAMIN WEY** is currently pending in this Court. *See, Hanna Bouveng v. NYG Capital LLC d/b/a New York Global Group, FNL Media LLC, and Benjamin Wey, Docket No. 14-CV-5474 (PGG.)*

18. This retaliation included threats by Defendant Chief Executive Officer **BENJAMIN WEY**, and culminated in Plaintiff **YONI WEISS**'s unlawful termination, in violation of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000 et seq., Title VII.

//

//

## PLAINTIFF'S SPECIFIC ALLEGATIONS

19. In approximately May 2013, Plaintiff **YONI WEISS** graduated *magna cum laude* and Phi Beta Kappa with a BFA from CUNY.

20. On or about October 1, 2013, Plaintiff **YONI WEISS** commenced working as a Graphic Designer for Defendants **NYGG** as an independent contractor. Plaintiff was paid approximately $2600 monthly.

21. Because he excelled at his job, Plaintiff **YONI WEISS** was promoted to a full-time contract employee on or about December 1, 2013. Plaintiff's employment contract with **FNL MEDIA** guaranteed that his employment could not be terminated without cause absent two days' written notice.

22. On or about January 1, 2014, approximately three months after the commencement of his employment, Defendants **NYGG** awarded Plaintiff **YONI WEISS** a raise in his annual salary from $31,200 to $52,000.

23. During his employment at **FNL MEDIA**, Plaintiff **YONI WEISS** worked alongside with and got to know Hanna Bouveng, the Director of Corporate Communications at **NEW YORK GLOBAL GROUP**. Hanna Bouveng came from a marketing and public relations background, and often provided insight regarding stories TheBlot Magazine was covering. In addition, Ms. Bouveng regularly attended TheBlot Magazine staff meetings with Defendant CEO **BENJAMIN WEY**, and provided insight concerning and assistance with promotion of the digital publication. Throughout Ms. Bouveng's employment, Plaintiff **YONI WEISS** saw Hanna Bouveng at work approximately daily.

24. Throughout the period Plaintiff **YONI WEISS** worked with Hanna Bouveng from approximately October 2013 until she was fired by Defendant CEO **BENJAMIN WEY** on or

about April 22, 2014, Plaintiff **YONI WEISS** observed the CEO constantly behave in a sexually inappropriate and lecherous manner toward Ms. Bouveng in the office.

25. Throughout the period Plaintiff **YONI WEISS** worked with Hanna Bouveng from approximately October 2013 until her April 22, 2014 termination, Plaintiff **YONI WEISS** observed Defendant **BENJAMIN WEY** frequently make remarks about Hanna Bouveng's physical appearance, such as: "Oh, she's so pretty" and "She looks so glamorous!" At the same time, the CEO leered at Ms. Bouveng. This was so even though Ms. Bouveng dressed more conservatively than most of the female employees in the office. Plaintiff **YONI WEISS** was shocked that a CEO would behave in such an openly inappropriate manner at the office.

26. From approximately October 2013 until her April 22, 2014 termination, Plaintiff **YONI WEISS** observed that Hanna Bouveng was clearly embarrassed by and did not reciprocate Defendant **BENJAMIN WEY**'s remarks. Instead, she either did not respond or changed the topic to something business-related.

27. Throughout the period Plaintiff **YONI WEISS** worked with Hanna Bouveng from approximately October 2013 until Ms. Bouveng's April 22, 2014 termination, Plaintiff **YONI WEISS** also observed Defendant CEO **BENJAMIN WEY** stand close beside Hanna Bouveng and place his hand on the small of her back whenever he was in the same room with her. Plaintiff thought this was clearly inappropriate, and noted that Ms. Bouveng was obviously uncomfortable with the CEO's physical advances as well.

28. In approximately March 2014, Plaintiff **YONI WEISS** learned from Hanna Bouveng that Defendant **BENJAMIN WEY** was repeatedly threatening to fire her, and telling her that she would be ruined if she did not do what he said.

29. During approximately April 2014, Plaintiff **YONI WEISS** noticed that Hanna Bouveng

was particularly stressed out at work as Defendant CEO **BENJAMIN WEY** and Defendants **NYGG** kept increasing her workload. At the same time, even though Ms. Bouveng was frantically trying to get everything done, she was still the consummate professional and pleasant with everyone at the office.

30. On or about April 23, 2014, Defendant **BENJAMIN WEY** summoned all of Defendants **NYGG**'s employees to a meeting and announced that Hanna Bouveng was no longer working for **NYGG**, that the company was no longer sponsoring her visa, and that Ms. Bouveng would be returning to Sweden.

31. Approximately one week later, on or about April 28, 2014, Plaintiff **YONI WEISS** met after work with Hanna Bouveng and Plaintiff's immediate supervisor Alicia Lu, Editor-in-Chief of TheBlot Magazine, at Zampa Winebar + Kitchen on West 13th Street in the West Village. While they were there, Hanna Bouveng answered on speaker phone a call from an "unknown" number. Plaintiff **YONI WEISS** then overheard Defendant **BENJAMIN WEY** harangue Ms. Bouveng for having "cheated" on him. At the same time, Defendant **BENJAMIN WEY** begged Hanna Bouveng to meet with him alone, preferably for dinner, at Per Se or any other restaurant or place she wanted. Ms. Bouveng declined.

32. Commencing approximately late April and throughout May 2014, Defendant CEO **BENJAMIN WEY** repeatedly reminded all of Defendants **NYGG**'s employees "we're a family" and "loyalty is my number one." Defendant CEO **BENJAMIN WEY** also repeatedly threatened: "Anyone who talks to someone outside the company is going to get fucked!" As was often the case, Defendant CEO **BENJAMIN WEY** was very aggressive and intimidating. Plaintiff recognized that the CEO's thinly-veiled threats were related to Ms. Bouveng's termination from **NYGG**. Plaintiff was intimidated.

33. On or about May 15, 2014, Defendant CEO **BENJAMIN WEY** called Plaintiff **YONI WEISS** into his office and met with him alone for approximately 20 minutes. During this meeting, Defendant CEO **BENJAMIN WEY** grilled Plaintiff **YONI WEISS** about whether he had seen Hanna Bouveng, whether he associated with her outside of work, and whether he had seen anything inappropriate occurring between him and Hanna Bouveng. Plaintiff **YONI WEISS** felt extremely intimidated and said nothing.

34. A few minutes later, on or about May 15, 2014, Plaintiff **YONI WEISS** was summoned into a meeting with three lawyers where he was told that Hanna Bouveng had "met up with lawyers" and had a potential case against Defendant **BENJAMIN WEY** and Defendants **NYGG** that they wanted to discuss with him. While Plaintiff **YONI WEISS** was scared to directly confront his boss, Defendant CEO **BENJAMIN WEY**, about his sexual harassment of Hanna Bouveng, he felt ethically obligated to tell **NYGG**'s lawyers the truth. Even though he was nervous about the ramifications of reporting **WEY**'s misconduct, he did so.

35. On or about May 15, 2014, Plaintiff **YONI WEISS** told Defendant **NYGG**'s lawyers that Hanna Bouveng was an excellent employee. Plaintiff **YONI WEISS** further told the lawyers that after the CEO fired Hanna Bouveng, he overheard a telephone call from Defendant CEO **BENJAMIN WEY** to Hanna Bouveng during which the CEO praised Ms. Bouveng for being "very smart" and begged her to go out to dinner with him.

36. The following day, on or about May 16, 2014, Defendant CEO **BENJAMIN WEY** again summoned a meeting with **NYGG**'s entire office and announced aggressively: "I'm the boss!" and "The past is the past" and "We should all move on." Defendant **BENJAMIN WEY** also said: "Anyone who talks to people outside the company, Pinocchio's nose gets too long, he gets fucked!" While **WEY** did not address Plaintiff **YONI WEISS** directly, the CEO repeatedly

glared at Plaintiff during the meeting.

37. During the same meeting on or about May 16, 2014, Defendant CEO **BENJAMIN WEY** told TheBlot Magazine staff that he had hired a former FBI agent to investigate the illegal drug activities of young Swedish girls in New York City. Defendant CEO **BENJAMIN WEY** further announced that he wanted to publish seven-eight articles about "crazy drug-addicted Swedish party girls that need to be fired because they party all the time," and was going to partner with the "number 1 tabloid in Sweden" and publish the articles in Swedish as well. While it was clear Defendant CEO **BENJAMIN WEY** was referencing Hanna Bouveng, the only Swedish person who had worked at the company, Plaintiff **YONI WEISS** and his co-workers found this especially bizarre since Hanna Bouveng was not a "party girl" and did not take drugs.

38. Following the meeting on or about May 16, 2014, TheBlot Magazine Editor Nikki Mascali and Social Media Manager Jason Gross approached Plaintiff **YONI WEISS**, asked if he was o.k., and asked why Defendant CEO **BENJAMIN WEY** was so angry at him. Defendant CEO **BENJAMIN WEY**'s threatening behavior was in direct retaliation for Plaintiff **YONI WEISS**'s report of **WEY**'s sexual harassment to **NYGG**'s lawyers.

39. On or about June 2, 2014, approximately two weeks after he reported Defendant **BENJAMIN WEY**'s sexual harassment of Hanna Bouveng to Defendant **NYGG**'s lawyers, Plaintiff **YONI WEISS** was fired by Defendant CEO **BENJAMIN WEY**.

40. During his meeting with the CEO on or about June 2, 2014, Defendant CEO **BENJAMIN WEY** told Plaintiff **YONI WEISS** he was "no longer allowed to work for" Defendants **NYGG** because he took vacation during his first year of employment, purportedly in violation of company policy. However, this was pretext. Not only did **NYGG** not have an official policy forbidding the same, but Defendant CEO **BENJAMIN WEY** had specifically approved Plaintiff **YONI**

WEISS's vacation in advance at a meeting in front of other NYGG employees.

41. Plaintiff **YONI WEISS** was fired in direct retaliation for honestly reporting Defendant CEO **BENJAMIN WEY**'s sexual harassment of Hanna Bouveng, and honestly speaking about her good character to Defendant CEO **BENJAMIN WEY**'s and **NYGG**'s lawyers.

42. As a consequence of the retaliation that culminated in his termination, Plaintiff **YONI WEISS** has suffered and continues to suffer emotional distress, including depression, anxiety, sleep disturbance and upset. Moreover, Plaintiff has suffered significant economic loss.

43. The allegations set forth above and below are incorporated by reference as if fully set forth herein.

## AS AND FOR A FIRST CAUSE OF ACTION
## TITLE VII - RETALIATION

44. Plaintiff **YONATAN WEISS** repeats and realleges each and every allegation contained in paragraphs 1 through 43 inclusive, with the same force and effect as though more fully set forth at length herein.

45. The aforesaid acts of intentional retaliation against Plaintiff by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **YONATAN WEISS**'s rights as provided under as provided under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, §2000e-2(a).

46. As a consequence of Defendant's retaliation against Plaintiff **YONATAN WEISS** during his employment with Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, Plaintiff has sustained and continues to sustain conscious pain and suffering, great mental distress and humiliation, has incurred and continues to incur monetary loss,

and has been subjected to adverse employment actions, including the termination of his employment.

47. As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, Plaintiff **YONATAN WEISS** is entitled to damages Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, §2000e-2(a).in the amount of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND ($300,000.00) DOLLARS punitive damages, plus economic damages, attorneys fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### NYSHRL - RETALIATION

48. Plaintiff **YONI WEISS** repeats and realleges each and every allegation contained in paragraphs 1 through 43 inclusive, with the same force and effect as though more fully set forth at length herein.

49. The aforesaid acts of intentional retaliation against Plaintiff **YONI WEISS** by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **YONI WEISS**'s rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

50. As a consequence of Defendants' retaliation against Plaintiff **YONI WEISS** while he was an employee of Defendant **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC** and after his termination, Plaintiff has sustained and continues to sustain

conscious pain and suffering, great mental distress and humiliation, has incurred and continues to incur monetary loss, and has been subjected to adverse employment actions, including the termination of his employment.

51. As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, Plaintiff **YONI WEISS** is entitled to damages under 15 N.Y. Exec. Law Section 297(4)(c) in a sum exceeding the jurisdictional limitations of this and all lower Courts.

## AS AND FOR A SECOND CAUSE OF ACTION
## NYCHRL -RETALIATION

52. Plaintiff **YONI WEISS** repeats and realleges each and every allegation contained in paragraphs 1 through 43 inclusive, with the same force and effect as though more fully set forth at length herein.

53. The aforesaid acts of intentional retaliation against Plaintiff by Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **YONI WEISS**' rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

54. As a consequence of Defendants' retaliation against Plaintiff **YONI WEISS** while he was an employee of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC** and after his termination, Plaintiff has sustained and continues to sustain conscious pain and suffering, great mental distress and humiliation, has incurred and continues to incur monetary loss, and has been subjected to adverse employment actions, including the termination of his employment.

55. As a consequence of the foregoing misconduct of Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC d/b/a NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC**, Plaintiff **YONI WEISS** has been damaged and is entitled to compensatory damages and punitive damages in a sum exceeding the jurisdictional limitations of this and all lower Courts.

WHEREFORE, Plaintiff **YONATAN WEISS** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC** in the First Cause of Action in the amount of SIX HUNDRED THOUSAND ($600,000.00) DOLLARS; Plaintiff **YONATAN WEISS** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC** in the Second Cause of Action in an amount to be determined at trial; and Plaintiff **YONATAN WEISS** demands judgment against Defendants **BENJAMIN WEY** and **NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP** and **FNL MEDIA LLC** in the Third Cause of Action in an amount to be determined at trial, all together with the costs and disbursements of this action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

Dated:    New York, New York
            December 8, 2014

**MORELLI ALTERS RATNER, LLP**

By: _/s/ David S. Ratner_
David S. Ratner, Esq. (DR-7758)
777 Third Avenue, 31st Floor
New York, New York 10017
(212) 751-9800